# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD,<br><br>    Plaintiff,<br><br>v.<br><br>DEPUTY MCDOUGALL,<br><br>    Defendant. | 1:17-cv-00575-DAD-GSA-PC<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER:**<br><br>**(1) FILE A THIRD AMENDED COMPLAINT,**<br><br>    **OR**<br><br>**(2) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY WITH THE CLAIM FOUND COGNIZABLE BY THE COURT**<br><br>**THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT OR NOTIFY THE COURT OF WILLINGNESS TO PROCEED** |

## I. BACKGROUND

William J. Gradford ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On April 24, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On May 30, 2017, the court screened the Complaint under 28 U.S.C. § 1915 and issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 9.) On June 8, 2017, Plaintiff filed the First Amended Complaint. (ECF No. 11.) On August 23, 2017, the court related this case to Plaintiff's other pending cases under Local Rule 123 and reassigned the case to the dockets of District Judge Dale A. Drozd and Magistrate Judge Gary S. Austin. (ECF No. 12.)

On April 30, 2018, the court consolidated Plaintiff's case 1:17-cv-01525-DAD-GSA-PC with this case, closing case 1:17-cv-01525-DAD-GSA-PC. (ECF No. 14.) The court ordered Plaintiff to file an amended complaint in the consolidated case 1:17-cv-00575-DAD-GSA-PC. (Id.) On May 9, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 15.)

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

///

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.     SUMMARY OF COMPLAINT

Plaintiff is presently a state prisoner in the custody of the California Department of Corrections and Rehabilitation, incarcerated at Mule Creek State Prison in Ione, California. The events at issue in the Complaint allegedly occurred at the Stanislaus County Public Safety Center in Modesto, California, when Plaintiff was detained there as a pretrial detainee in the custody of the Stanislaus County Sheriff. Plaintiff names Deputy McDougall as the sole defendant ("Defendant").

Plaintiff's allegations follow. On January 19, 2017, Plaintiff asked Deputy Freddie [not a defendant] to process one outgoing letter addressed to a criminal attorney, containing very important information regarding Plaintiff's pending charges. The letter was clearly addressed to the attorney, with name and address, and "Confidential Mail" was written on the front of the envelope in clear bold lettering, which Deputy Freddie noticed and acknowledged. Deputy Freddie took the envelope, removed the contents of the envelope, searched for contraband (finding none), put the contents back in the envelope, and sealed and stamped it. Plaintiff was afraid to ask Deputy Freddie to sign the envelope seal because Plaintiff feared an intimidating response. Deputy Freddie told Plaintiff to put the envelope into the unit's outgoing mailbox, which Plaintiff did as Deputy Freddie watched him.

Later that day, defendant Deputy McDougall came on duty, relieving Deputy Freddie. During the night, when Plaintiff was asleep, defendant McDougall came to Plaintiff's cell with the exact same envelope that Deputy Freddie had processed earlier that same day. Defendant McDougall unlocked Plaintiff's cell door and opened it, stating that he was going to reopen this letter, in Plaintiff's presence and without Plaintiff's permission. Defendant McDougall broke

the seal, reopened the envelope, removed the contents, searched for contraband again, and began slowly reading the contents, for a long time, as Plaintiff sat on his bed, watching in complete silence. Plaintiff was extremely fearful because the contents contained very important information about Plaintiff's pending criminal case. After reading Plaintiff's letters, defendant McDougall placed the contents back in the envelope, re-sealed and signed the envelope, and closed Plaintiff's cell door. Plaintiff filed a grievance against defendant McDougall for reading his outgoing legal mail out of revenge for Plaintiff reporting defendant McDougall's co-deputies Tiexiera and McCarthy [not defendants] for threatening Plaintiff's life. Deputy Tiexiera had told Plaintiff that if he reported Tiexiera's inappropriate acts against inmate Ibanez, Plaintiff would be next. Tiexiera had thrown inmate Ibanez against the wall while Ibanez was on the floor having a seizure, unresponsive. Deputy McCarthy told Plaintiff, "Gradford, if you know what's good for you, you would keep your mouth shut." ECF No. 15 at 10:2-4.

Defendant McDougall continued to intimidate, degrade, harass, and seek revenge against Plaintiff. Plaintiff continued to complain and wrote to approximately 40 different government agencies across the U.S., including two local organizations (ACLU and NAACP) during an 8-month period. All of the higher-ranking deputies were covering up and allowing the revenge against Plaintiff, including revenge by defendant McDougall. This is one reason defendant McDougall kept opening Plaintiff's outgoing legal mail, to see what Plaintiff was saying in his letters. McDougall, like other deputies, was doing everything he could to completely silence Plaintiff from reporting him. Plaintiff really thought the deputies were going to harm or kill him.

Again, on February 11, 2017, Deputy Freddie processed five of Plaintiff's outgoing mail envelopes, one which was addressed to a criminal attorney containing very important information about Plaintiff's pending case. The other four envelopes were being mailed to different government agencies explaining the revengeful actions against Plaintiff by deputies, including Deputy McDougall, because Plaintiff had reported against Deputies Tiexiera and McCarthy. Deputy Freddie examined the envelopes to ensure that they were legal mail, with

"Confidential Mail" boldly written on the front. Deputy Freddie processed the mail the same as he did on January 19, 2017, as described above. Again, Plaintiff was afraid to ask Deputy Freddie to sign the sealed envelope. As before, Plaintiff placed all five of the envelopes in the unit's outgoing box while Deputy Freddie watched him.

Later that same day, defendant McDougall again came on duty to relieve Deputy Freddie. At about 7:00 p.m., Plaintiff decided to take a shower. As Plaintiff walked toward the shower, past defendant McDougall at his stationed desk, he saw that defendant McDougall had all of Plaintiff's legal envelopes, including one to Plaintiff's criminal attorney, on his desk. Defendant McDougall had removed them from the unit's outgoing, locked/secured mailbox after Deputy Freddie had already processed them. Defendant McDougall said he had to reopen all of them later. When Plaintiff finished showering and walked back past defendant McDougall's desk, McDougall told Plaintiff he would open them now. Plaintiff watched defendant McDougall reopen all of the envelopes one by one, remove the contents, search for contraband, and slowly read the contents for a long time. Plaintiff walked away, deeply upset. Plaintiff filed a grievance against defendant McDougall again, for reading Plaintiff's mail, which was a revengeful act against Plaintiff.

Plaintiff realized that Deputy Freddie was helping Deputy McDougall by purposely not signing Plaintiff's legal outgoing mail, which he is required to do. These legal envelopes were not being signed by Freddie so that defendant McDougall would have an excuse to cover his revengeful acts against Plaintiff that compromised Plaintiff's criminal case.

On February 3, 2017, during a Friday clothing exchange, defendant McDougall made comments about reading Plaintiff's outgoing legal mail. Plaintiff immediately filed another grievance against him. Defendant McDougall continued his revengeful behavior against Plaintiff, an African-American inmate, and higher-ranking jail officials continued to ignore Plaintiff's many complaints about revenge by deputies.

On February 11, 2017, defendant McDougall laughed at Plaintiff and harassed him, seeking revenge with Deputy YouseFPoor [not a defendant]. One day, Plaintiff asked Deputy Messervery [not a defendant] why defendant McDougall continues to reopen Plaintiff's mail

after Deputy Freddie has already processed it. Deputy Messervery replied, "That's wrong what

///

McDougall is doing." ECF No. 15 at 14:15-16. Plaintiff added this statement to a grievance form.

Plaintiff was at all times, while incarcerated at the county jail, a model prisoner and never gave officials or other prisoners any problems. There is no reason for deputies to be revengeful toward Plaintiff except that he reported Deputies Tiexiera and McCarthy for threatening his life. When Plaintiff was transferred to DVI and then Mule Creek State Prison, he continued to experience revengeful tactics by some officials because when he arrived at each prison he told counselors that officials need to protect him from retaliation because of what the Stanislaus County deputies did. Plaintiff will always have fears of retaliation, even by third parties. Plaintiff's African-American race was a factor in all of the revengeful actions. A few years ago, an African-American Stanislaus County Sheriff's Deputy Scott was arrested for a domestic issue, jailed at the Stanislaus County Men's Jail, and killed by his own white co-deputies. What more will these deputies do to Plaintiff if they killed their own in-house deputy Scott, with Plaintiff being an African-American inmate who reported their inappropriate acts and their revenge against Plaintiff and inmate Ibanez?

Plaintiff seeks declaratory relief, punitive damages, and costs of suit.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los

Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Rights of Pretrial Detainees

Plaintiff was a pretrial detainee at the time of the events at issue. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pre-trial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Anderson v. Cnty. of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995); Maddox v. City

of Los Angeles, 792 F.2d 1408, 1414-15 (9th Cir. 1986). For example, where the pretrial detainee is claiming that prison officials are liable for a breach of the duty to protect the detainee from attack by other inmates and detainees, the court should utilize Eighth Amendment standards. See Redman v. Cnty. of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc); see also Pierce, 526 F.3d at 1209-13 (explaining that detainees in administrative segregation are entitled under the First and Eighth Amendments to ongoing participation in religious activities and adequate opportunities for exercise); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (stating that Eighth Amendment establishes minimum standard of medical care for pretrial detainees).

In two recent decisions, the Ninth Circuit clarified the circumstances under which a plaintiff properly alleges a legal mail interference claim under the First and Sixth Amendments. See Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence); Mangiaracina v. Penzone, 849 F.3d 1191, 1196-97 (9th Cir. 2017) (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation).

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' rights to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell v. Wolfish, 441 U.S. 520, 538-39 (1979)); Pierce, 526 F.3d at 1205; Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

## B. Sixth Amendment Mail Protections

Plaintiff brings a claim alleging that his outgoing mail rights were violated. Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have a legitimate government interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina, 849 F.3d at 1195.

When the mail is legal mail, there are heightened concerns with allowing prison officials unfettered discretion in opening and reading an inmate's mail. Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. Id. at 1196 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." Id. at 1198 (quoting Nordstrom v. Ryan, 762 F.3d 903, 910 (9th Cir. 2014)).

In this case, Plaintiff alleges that defendant McDougall opened Plaintiff's outgoing legal mail in front of Plaintiff, took the contents out, checked for contraband, and then slowly read the contents for a long time. The letters were clearly addressed to Plaintiff's criminal attorney and contained information about Plaintiff's pending criminal case. Thus, Plaintiff's communication was clearly meant for Plaintiff's criminal attorney, and was therefore protected. Therefore, Plaintiff states a cognizable claim against defendant McDougall for interference with his legal mail in violation of the Sixth Amendment.

## C. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th

Cir. 1985); see also <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).

///

As discussed by the Ninth Circuit in <u>Watison v. Carter</u>:

> "A retaliation claim has five elements. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. <u>Id.</u> at 567. The adverse action need not be an independent constitutional violation. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." <u>Brodheim</u>, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. <u>See</u> <u>Pratt</u>, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); <u>Murphy v. Lane</u>, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." <u>Robinson</u>, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," <u>Brodheim</u>, 584 F.3d at 1269, that is "more than minimal," <u>Robinson</u>, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. <u>Id.</u> at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, <u>id.</u>, or that they were "unnecessary to the maintenance of order in the institution," <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1230 (9th Cir.1984)."

<u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt</u>, 65 F.3d at 807 (9th Cir. 1995) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." <u>Pratt</u>, 65 F.3d at 808.

Plaintiff alleges that defendant McDougall purposely read Plaintiff's confidential legal mail, compromising Plaintiff's pending criminal case, in revenge for Plaintiff filing a grievance against Deputies Tiexiera and McCarthy.

Plaintiff has sufficiently alleged that he was participating in protected conduct when he filed a grievance against deputies Tiexiera and McCarthy. Therefore, Plaintiff satisfies the first element of a retaliation claim.

As for the second element, whether defendant McDougall took an adverse action against Plaintiff, this element is satisfied because purposely reading Plaintiff's confidential attorney-client protected mail constitutes an adverse action.

However, Plaintiff has not alleged facts showing that defendant McDougall read Plaintiff's mail *because* Plaintiff filed a grievance against Deputies Tiexiera and McCarthy. To state a claim for retaliation, Plaintiff must allege facts "show[ing] that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (internal quotation marks and citation omitted). To raise a triable issue as to motive, a plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of motive]." McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial evidence of motive may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." Id. (internal citation and quotation marks omitted). Here, Plaintiff alleges that defendant McDougall retaliated against him because Plaintiff filed a grievance against Deputies Tiexiera and McCarthy. However, Plaintiff has not shown the requisite connection between his filing a grievance against Deputies Tiexiera and McCarthy and defendant McDougall reading Plaintiff's mail.[1] Plaintiff alleges no facts causing the court to

---

[1] See discussion in Hendrix v. Nevada about what constitutes protected conduct in stating a retaliation claim. Hendrix v. Nevada, No. 3:15-CV-00155-MMD-WGC, 2017 WL 9732574, at *6, 10-11, 16-17, 22 (D. Nev. Nov. 17, 2017), report and recommendation adopted, No. 3:15-CV-00155-MMD-WGC, 2018 WL 1135708 (D. Nev. Mar. 2, 2018).

infer a connection between Plaintiff's grievance and defendant McDougall's reading of Plaintiff's mail.

///

///

Accordingly, Plaintiff fails to state a cognizable claim for retaliation against defendant McDougall. Plaintiff shall be granted leave to file an amended complaint curing the deficiencies in this claim found by the court.

### D. <u>**Discrimination -- Equal Protection Clause**</u>

The Equal Protection Clause requires the State to treat all similarly situated people equally. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,"' (citing <u>see</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, <u>Engquist v. Oregon Department of Agr.</u>, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges in the Complaint that his African-American race was a factor in all of the revengeful actions against him. Plaintiff refers to an incident that happened a few years ago in which Stanislaus County Sheriff's Deputy Scott, who was African-American, was arrested for a domestic issue, jailed at the Stanislaus County Men's Jail, and killed by his own white co-deputies. Plaintiff fears that if the deputies would kill their own in-house African-American deputy, they are likely to mistreat Plaintiff, an African-American inmate, because he reported on inappropriate acts by other deputies.

Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

///

### E. **Plaintiff's References in the Second Amended Complaint to Other Cases and Evidence Not Submitted**

In the Second Amended Complaint, Plaintiff refers to other cases and evidence that was not submitted with the complaint. Examples follow.

(1) "(Please see pending filthy showers cases freddie has also decided to seek revenge")." (ECF No. 15 at 13:5.)

(2) "(Please see Mejia/YouseFPoor related case under Rule 123)." (ECF No. 15 at 14:6-7.)

(3) "(Please see Deputy Tiexiera grievance response after I grievanced him and deputy McCarthy for threatening me, Tiexiera clearly states that I am/was a very "model inmate" etc.)." (ECF No. 15 at 14:21-23.)

(4) "(Please see the Modesto Bee Article)." (ECF No. 15 at 16:1.)

Plaintiff may not add information to his complaint in this manner. Any information Plaintiff wishes the court to consider must be included in the complaint or attached as exhibits to the complaint. The court only considers the complaint itself and exhibits filed concurrently with the complaint, not outside information mentioned in passing. To incorporate exhibits into the complaint, Plaintiff should refer to the pertinent exhibits in the body of the complaint, directing the court to the exact location of the information found in the exhibits. Fed. R. Civ. P. 10(c). Plaintiff did not attach any exhibits to the Second Amended Complaint.

Plaintiff is also advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be

complete in itself *without reference to the prior or superceded pleading*. (emphasis added.) Local Rule 220.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states a cognizable claim under the Sixth Amendment against Defendant McDougall for interfering with Plaintiff's legal mail. However, Plaintiff fails to state any other claims against Defendant upon which relief may be granted under § 1983. Plaintiff shall be required to <u>either</u> file a Third Amended Complaint, <u>or</u> notify the court of his willingness to proceed only with the claim against defendant McDougall for interfering with Plaintiff's legal mail. Should Plaintiff choose to proceed only on the claim found cognizable by the court, the court will begin the process to initiate service upon defendant McDougall by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a Third Amended Complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, <u>Iqbal</u>, 556 U.S. at 678; <u>Jones</u>, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. <u>Iqbal</u>, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. <u>Jones</u>, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of the complaint or adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on April 24, 2017.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey, 693 F. 3d at 907 n.1, and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly

///

titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    (1) File a Third Amended Complaint curing the deficiencies identified in this order, or
    (2) Notify the court in writing that he does not wish to file an amended complaint and is instead willing to proceed with only the mail interference claim found cognizable by the court against defendant McDougall.
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:17-cv-00575-DAD-GSA-PC; and
4. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated: **August 19, 2018**              **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE